**Shelton WALLS, Petitioner,**

v.

**Larry KERR, Respondent.**

No. 83–C–370.

United States District Court,
W.D. Wisconsin.

Aug. 5, 1983.

Shelton Walls, petitioner, pro se.

U.S. Atty. John R. Byrnes, Madison, Wis., for respondent.

## ORDER

SHABAZ, District Judge.

Shelton R. Walls, an inmate at the Federal Correctional Institution (FCI) at Oxford, Wisconsin, has petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2241 (1976). The petition is denied.

### I. FACTS

In 1980 petitioner Walls, who was nineteen years old at the time, was sentenced to two concurrent, indeterminate terms under the Youth Corrections Act (YCA), 18 U.S.C. § 5010(b) (1976), by two different judges of the Superior Court of the District of Columbia. Between 1980 and 1982, Walls was incarcerated at three different institutions designated for YCA offenders.

In 1982, Director of the Bureau of Prisons Norman Carlson wrote the original sentencing judges, advising them of Walls' allegedly serious disciplinary and adjustment problems at the YCA institutions. Carlson recommended that Walls be transferred to a more secure adult institution, expressing the hope that, "you agree ... Mr. Walls will not benefit from further YCA treatment."

Shortly thereafter, one of the sentencing judges wrote Carlson, stating, "I would concur in the assessment that he [Walls] will not benefit from further Youth Corrections Act treatment." The other sentencing judge was deceased, but his successor responded, "I will defer to your plan to place Mr. Walls in a more highly structured environment." Neither judge imposed a new sentence upon Walls. Apparently relying on the judges' statements, the Bureau of Prisons transferred Walls to the FCI at Oxford, an adult institution.

On April 29, 1983, this Court gave Walls leave to proceed *in forma pauperis* in his application for a writ of habeas corpus. Petitioner Walls argues that the Superior Court judges were without jurisdiction to modify his YCA sentence because, under Rule 35 of the Federal Rules of Criminal Procedure, a sentencing judge retains jurisdiction to modify or correct a sentence for only 120 days after sentencing. He asks the Court to order respondent to transfer him from Oxford to a YCA facility, citing *Watts v. Hadden,* 651 F.2d 1354, 1366 (10th Cir.1981) (offender sentenced under YCA entitled to YCA treatment).

### II. MERITS OF PETITIONER'S CLAIM

The threshold issue is whether the sentencing court retained jurisdiction over Walls to modify his sentence more than two years after it was originally imposed.

■ If an offender serving a YCA sentence is convicted of a second offense and the court imposes an adult sentence to be served consecutively to the YCA sentence, the judge sentencing the offender for the second offense may find that further YCA treatment will be of no benefit to him and order that the remainder of his YCA sentence be served in an adult prison. *Ralston v. Robinson,* 454 U.S. 201, 102 S.Ct. 233, 70 L.Ed.2d 345 (1981).

In *Ralston,* the Court noted that the YCA sentencing option shifted a significant de-

gree of responsibility for the conditions of an offender's confinement from prison officials to the sentencing court. A YCA sentence not only segregates a young offender from the vast majority of persons imprisoned in the federal system but also, at least in theory, alters the very purpose of confinement through its emphasis on rehabilitation.

The Court found that the sentencing court's responsibility for and jurisdiction over a YCA offender must be ongoing. The Congress would not have taken away the power of prison officials to modify the condition of a YCA offender's confinement, the Court reasoned, without vesting the power elsewhere:

> [W]e do not believe that when Congress withdrew from prison officials some of their traditional authority to adjust the conditions of confinement over time, Congress intended no one exercise that authority. The result would be an inflexible rule requiring, in many cases, the continuation of futile YCA treatment. The only reasonable conclusion is that Congress reposed that authority in the Court, the institution that the YCA explicitly invests with the discretion to make the original decision about the basic treatment conditions.

*Id.* at 215, 102 S.Ct. at 242. The Court analogized the sentencing court's power to modify a YCA sentence to its power to impose a suspended prison term over and above probation; like the suspended term/probation sentence, a YCA sentence is a favorable initial disposition of a conviction that is conditioned on subsequent good behavior. *Id.* at 217, 218 n. 10, 102 S.Ct. at 243, 244 n. 10.

Applying *Ralston* to the immediate case, the Court finds it undercuts petitioner's argument that the sentencing court lacked jurisdiction to modify his YCA confinement. If a *second* sentencing judge has the authority to make a no-further-benefit finding, terminate an offender's YCA commitment and order that the offender serve the unexpired portion of his YCA sentence at an adult institution, certainly the original

sentencing court retains jurisdiction to modify the sentence it imposed by taking those same steps.

Accepting the fact of continuing jurisdiction, the Court is still troubled by a matter alluded to in both the majority and dissenting opinions in *Ralston:* If the sentencing judge makes a no-further-benefit finding, terminates the YCA status of an offender sentenced to an indeterminate term under 5010(b) and orders the offender transferred to an adult institution, under which statute and for what term is continued confinement of the offender authorized?

In that situation, like the immediate case, the judge's finding rebuts the presumption that an individual eligible for a YCA sentence will benefit from YCA treatment and thereby undercuts the original justification for sentencing under the YCA statute. Yet, the court did not impose an adult sentence pursuant to any of the regular criminal penalty statutes. The statutory authority for continued confinement of the individual is thus unclear.

The actual term of imprisonment of an individual confined to an adult prison under what was formerly a YCA sentence is also unclear. Given the differing purposes and conditions of YCA and adult confinement, it is questionable whether Congress intended the automatic conversion of an unexpired YCA term into an identical term under the equivalent of an adult sentence merely upon a no-further-benefit finding. *Id.* at 226–231, 102 S.Ct. at 248–250 (Stevens, J., dissenting). Furthermore, even Congressional intent could not justify an automatic conversion when the resulting term would be longer than the maximum term that could have been imposed if the offender had originally been sentenced as an adult. *Ralston,* 454 U.S. at 219, 220 n. 13, 102 S.Ct. at 244, 245 n. 13 (Citations omitted).

■ The Court believes continued incarceration of an individual under the circumstances of this case, without clear statutory authority and for a term unrelated to the character of his offense, rubs against the grain of a society valuing certainty of punishment, equal protection under the laws and fundamental fairness in government's

dealings with citizens. Certainly, there must be a better way to deal with the youthful YCA offender later found to be incorrigible than the summary procedure that sent petitioner Wall to the FCI at Oxford. One reasonable solution might be for a judge making a no-further-benefit finding to resentence the offender under an adult sentencing statute to a term no longer than the maximum term under the original YCA sentence or the statutory maximum for the offense involved, whichever is less. Time already served under the YCA sentence could then be credited to the offender under the adult sentence.

■ In any case, even if a YCA offender's conviction for a second offense justifies a no-further-benefit finding and automatic conversion of the unexpired YCA term into the equivalent of an adult sentence, a key question remains in this case. Is it proper for a sentencing judge to find that further treatment of an offender under the YCA will be of no benefit to him on the basis of conclusory, *ex parte* information from prison officials like that which was acted upon by the sentencing judges in the immediate case?

It would not be an exaggeration to suggest that the no-further-benefit finding has as great an impact on an offender as the original decision to sentence him or her to a term under the YCA. In light of that impact, the Court believes the Due Process Clause requires the sentencing judge to at least give the offender an opportunity to respond to prison officials' allegations, if not hold a full-blown evidentiary hearing on the charges, before reaching his or her decision.

In summary, while petitioner Walls' claim that the sentencing court was without jurisdiction must fail, he may indeed have a claim that his continued confinement at Oxford is illegal, either on the grounds that his YCA sentence was voided by the finding of no further benefit, or because that summary finding, and the resulting change in the conditions of his confinement violated his right to due process.

The Court is precluded from resolving these sentencing issues on their merits and granting petitioner relief, however, by 28 U.S.C. § 2255, which gives a prisoner a postconviction remedy in the sentencing court for claims that his or her sentence is void or voidable. That section also states:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him ...

28 U.S.C. § 2255 (1976). *See also Swain v. Pressley,* 430 U.S. 372, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977) (District of Columbia Statute similar to § 2255 prevented district court from passing on merits of habeas petition involving sentencing issue brought by petitioner convicted in the superior court).

It does not appear that Walls has raised these issues by motion in the sentencing court; consequently, this Court does not have jurisdiction to resolve them.

Accordingly:

## ORDER

IT IS ORDERED that petitioner Walls' application for a writ of habeas corpus is DENIED.